Argued April 21, affirmed June 8, 1920.

## THE W. T. RAWLEIGH CO. *v.* McCOY.*

(190 Pac. 311.)

**Guaranty—Contract—"Purchase"—"Transfer."**

1. Where a company contracted to sell goods on credit at wholesale to a buyer reselling the same in certain territory, and the buyer with the company's approval accepted from another buyer from it under a similar contract goods in his possession not paid for, and authorized the company to charge him with the amount of the invoice price thereof, he obtained title thereto, by transfer from the other buyer, who had absolute title, and not by purchase from the company, within the terms of a guaranty of payment for goods purchased under the contract; a "transfer" being an act or transaction by which property of one person is by him vested in another.

**Guaranty—Liability—Compensation—Construction.**

2. Liability of guarantors without hire or compensation is strictly construed.

From Lane: GEORGE F. SKIPWORTH, Judge.

Department 2.

The plaintiff is an Illinois corporation, with its principal office and place of business at Freeport, in that state, and a branch office at Oakland, California. It is engaged in a line of supplies commonly placed and used in the country home. Its method of business is for someone to make an application to the home office to purchase its goods, wares, and merchandise, to be sold by him within a certain territory. If found suitable, it then forwards one of

---

*For authorities passing on the question of definition and elements of a sale, see note in 26 L. R. A. (N. S.) 5. REPORTER.

its standard written contracts, attached to which and made a part thereof is a guaranty, to be executed by two or more different persons, to the effect that they are liable for and will pay for all goods that may be purchased from the plaintiff by their principal under the contract.

In the instant case M. C. Seward entered into such contract with the plaintiff, the material provisions of which are that it agreed to deliver the merchandise sold to Seward f. o. b. at Freeport, Illinois, or one of its branches at its option.

"Said seller agrees to sell said buyer all such goods, wares and merchandise at its current wholesale prices at the date of shipment; such prices to be shown by itemized invoice for each purchase, and shipment to be made on orders from said buyer."

In consideration thereof Seward agreed to pay the plaintiff its wholesale price f. o. b. for all merchandise which he purchased, and it agreed to purchase from him during the term, or after the expiration of the contract, at current wholesale prices, such merchandise as he "may then have on hand and unsold," provided it is in suitable condition, and "pay or credit the buyer therefor on the return of such products." He agreed to pay the plaintiff "its actual expenses of receiving, inspecting, and overhauling all such goods, wares, and merchandise." The contract further provided that it is subject to acceptance at the office of said seller at Freeport, Illinois, and "shall be in force and effect from and after the date of its acceptance," and that it might be terminated upon the written notice of either party, and that it would expire by its own limitation on December 21, 1918; also "that this contract includes and does and shall constitute the sole and

only and entire agreement between the parties hereto," and that it "shall not be changed or modified in any particular whatsoever by any employee or representative of the seller in any capacity, unless any such change or modification shall first be specifically reduced to writing and signed by both of the parties hereto, and then any such change or modification shall only be effective after the corporate seal of the seller shall have been duly affixed thereto."

In consideration of extending a line of credit to Seward, the defendants did "jointly and severally guarantee, unconditionally, the full and complete payment to said company of any and all indebtedness which may become due under the terms of the above and foregoing contract by the buyer named as such therein," and agreed that the guarantee could be enforced against them without joining Seward as a party to the action. There are a number of immaterial provisions. The contract with the guarantee attached was duly accepted in writing by the plaintiff at its home office on August 9, 1917.

The plaintiff alleges that between August 16, 1917, and January 8, 1918, and relying upon said guarantee and the credit of the defendants, it sold and delivered to Seward merchandise of the reasonable value of $563.69, upon which there had been paid $321.88, leaving a balance of $241.81 due and owing, for which it prays judgment against the defendants, with interest.

The defendants admit the making of the contract by Seward, and the execution of the guarantee as alleged, deny all other material allegations, and as an affirmative defense in the nature of a plea in abatement allege that the plaintiff has failed to comply with the laws of Oregon relating to the doing of

business with foreign corporations or the appointment of an agent, and that it was engaged in doing business in the State of Oregon at the time of the alleged making of the contract. As a second defense they plead that the alleged contract set out in the complaint was not executed or accepted by the plaintiff until the seventeenth day of August, 1917; that Seward had paid the plaintiff for all the goods which he had purchased after that date, and that such payments should be applied on the sale of goods which he purchased after the guarantee was accepted. It is then alleged that about December 1, 1917, plaintiff terminated its contract with Seward, took away from him all of the goods in his possession, and transferred them to Max Luebke, of Cottage Grove, Oregon, substituting him as a debtor for Seward; that the plaintiff now seeks to hold the defendants liable for the goods which were transferred by the plaintiff to Luebke without the consent of the defendants, and by reason thereof the alleged guarantee became and is null and void; and that defendants were released from liability. The defendants plead a third defense which is not important here.

For reply the plaintiff alleged that the goods referred to in the complaint were sold to Seward and the contract therefor was made in the State of Illinois, and it is not liable for a license fee to the State of Oregon, and that Seward was given credit on his contract to the plaintiff for all the goods which were turned over to Luebke, and for the amount thereof defendants were released upon their guaranty.

It appears that J. S. Barnett had a like contract with the plaintiff in the same territory, which it

terminated on August 4, 1917, and that he then had in his possession in Lane County, Oregon, goods, wares and merchandise which he had purchased from the plaintiff, and which were of the reasonable value of $320.94. Barnett then delivered this merchandise to Seward, who took actual possession of it as of that date, and thereafter proceeded to sell it as his own.

When the plaintiff had introduced its evidence the court stated "that by eliminating the Barnett claim of $320.94 the defendants are entitled to a directed verdict. Therefore that will be the order of the court, a directed verdict for the defendants." Plaintiff duly excepted to this ruling. The jury returned such a verdict, upon which judgment was entered and from which the plaintiff appeals.    AFFIRMED.

For appellant there was a brief over the names of *Mr. Fred. E. Smith* and *L. M. Cravis,* with an oral argument by *Mr. Smith.*

For respondents there was a brief and an oral argument by *Mr. C. A. Hardy.*

JOHNS, J.—1. The vital question in this case is: To whom did Barnett sell his stock on August 4, 1917, which was then in Lane County, Oregon, from whom did Seward purchase it, and when and where was the deal consummated? Assuming that the defendants are not liable for the goods which Seward received from Barnett, it is apparent that Seward has paid the plaintiff in full for all the merchandise which he purchased from the plaintiff, and that it would not have any legal claim against the defendants.

When the contract between them is analyzed, it simply means that the plaintiff agrees to sell and Seward agrees to buy such reasonable quantities of goods, wares and merchandise as he "may from time to time desire to purchase" at current wholesale prices at the date of shipment, to be evidenced by an itemized invoice, which purchase and shipment is to be made on orders from Seward, and in consideration thereof he agrees to pay the plaintiff such prices for the goods which may from time to time be sold to him. In other words, on the stipulated terms, Seward agreed to pay for all the goods which he actually purchased from the plaintiff. The defendants guaranteed the full and complete payment to plaintiff of any indebtedness of Seward which might become due or owing for the goods which he purchased under the contract.

On August 4, 1917, Barnett signed the following statement addressed to the plaintiff:

"Subject to your approval, I have this date transferred to Mr. E. M. Seward, address Divide, Ore."

Then follows the list of products, supplies, etc., transferred, amounting to $320.94. At the same time Seward signed the following written statement, also addressed to plaintiff:

"Subject to your approval, I have this date accepted from Mr. J. S. Barnett, Address, Creswell, Ore., all of the products listed above, and certify that this is a true and absolutely correct list of all products transferred. I hereby instruct and authorize you to charge these products to my account at regular current wholesale prices to buyers. I have retained a list of the products received as shown above, and ask you to mail me a fully itemized invoice promptly."

These writings were executed at Creswell, in Lane County, Oregon, in the presence of F. G. Larson, of Oakland, California, who was apparently acting for and representing the plaintiff. At Freeport, Illinois, on August 16, 1917, the plaintiff mailed to E. M. Seward, Divide, Oregon, the following communication:

"Following is a list of products you report receiving from Mr. J. S. Barnett, Creswell, Ore. Complying with your instructions, we have charged these products to your account at current wholesale prices as follows: [Then follows a list of the prices]."

Under the same conditions another like notice was mailed on August 29, 1917, and notice in return was mailed to Seward on September 27, 1917. This price list amounted to $35.75.

Exclusive of such writings there is no competent testimony as to when, where, how, and by whom Seward acquired title to the goods which he received from Barnett; but it appears from them that subject to the approval of the plaintiff, on August 4, 1917, Barnett transferred the listed merchandise to Seward, and that, concurrent therewith and subject to the approval of the plaintiff, Seward accepted the transfer and authorized the plaintiff to charge him with the amount of the invoice price.

"A transfer is an act or transaction by which property of one person is by him vested in another. This, without the use of some qualifying word, is the legal meaning of the term. Transfer is an act of the parties or of the law, by which the title to property is conveyed from one living person to another": 8 Words & Phrases, 7064.

"The Supreme Court, in the case of *Pirie* v. *Chicago Title & Trust Co.,* 182 U. S. 438 (45 L. Ed. 1171, 21 Sup. Ct. Rep. 906, see, also, Rose's U. S. Notes),

said 'transfer' is defined to be not only the sale of property, but every other and different mode of disposing of and parting with property. All technicality and narrowness of meaning is precluded. The word is used in its most comprehensive sense, and is intended to include every means or manner by which property can pass from the ownership and possession of another'': 8 Words & Phrases, 7066.

The plaintiff contends that it purchased those listed goods from Barnett on August 4, 1917, and sold them to Seward on August 16, 1917, after it had accepted defendants' guarantee on August 9, 1917. The burden of proof was upon the plaintiff, and the only competent evidence of the sale was the writings. As we analyze them, Seward obtained title to those goods through the transfer from Barnett, of which the company was duly notified; in consideration thereof Barnett was credited on his account with the plaintiff for the amount of the invoice price; and concurrent therewith Seward assumed, and the plaintiff charged him with the amount for which it had given Barnett credit. In other words, Seward assumed the payment of Barnett's debt for the amount of the listed price. Under a like contract Barnett had previously purchased from the plaintiff and agreed to pay for the merchandise which he transferred to Seward on August 4, 1917, and it was charged to him on plaintiff's books. It was his property, and he had a right to transfer it to Seward or anyone else, with or without the approval of the plaintiff. While it is true that the actual amount which Seward was to pay for it was evidenced by the value placed upon the listed goods by the plaintiff, the purpose of that was to determine the amount of Barnett's debt to the plaintiff, which Seward had assumed and agreed to pay,

and for how much the plaintiff should give credit, and the amount which it should charge to Seward.

2. The defendants became guarantors to Seward without hire, or any compensation moving to them, and for such reason their liability must be strictly construed.

"A guarantor, like a surety, is bound only by the strict letter or precise terms of the contract of his principal, whose performance he has guaranteed": *Staver & Walker* v. *Locke*, 22 Or. 519 (30 Pac. 497, 29 Am. St. Rep. 621, 17 L. R. A. 652).

Under their guaranty the liability of the defendants was limited to the payment for goods which Seward purchased from the plaintiff on or after August 9, 1917, and they are not liable for the merchandise which was transferred by Barnett to Seward on August 4, 1917, or any debt of Barnett to the plaintiff which Seward assumed and agreed to pay.

Judgment is affirmed.                    AFFIRMED.

McBRIDE, C. J., and BENNETT, J., concur.

BEAN, J., Dissenting.—This case turns upon the question of whether or not E. M. Seward, who had a contract with the plaintiff, the W. T. Rawleigh Company, which the defendants guaranteed in writing, purchased the first lot of goods received by him, which are involved in the action, from plaintiff or from J. S. Barnett. It appears that Barnett dealt with and sold the goods of plaintiff under a contract like the one between plaintiff and Seward. This contract provided, among other things, as follows:

"The seller agrees to purchase from said buyer at any time during the term of or promptly after the termination or expiration of this contract, and at the wholesale prices then current, all goods, wares

and merchandise (wagon excepted) as the buyer may then have on hand and unsold: Provided, that these products are in as good and· salable condition when received by the seller as when purchased by him from the seller, and pay or credit the buyer therefor on the return of such products promptly by prepaid freight to Freeport, Illinois, or at such other branch, transfer house, or other regular place of shipment as may be designated by the seller in writing; and provided, further, that said buyer shall pay to the seller its actual expense of receiving, inspecting, and overhauling all such goods, wares and merchandise.''·

By deposition J. R. Jackson, the secretary of the plaintiff company, testified as to the purchase of the goods thus:

''26—You may state whether or not E. M. Seward, after the making of the contract, Exhibit 'A,' purchased any goods from the plaintiff, under said contract, and, if so, how were such purchases made.'' To which the witness made the following answer: ''Yes, after his contract was accepted, Mr. Seward purchased goods from us under this contract. The first goods he purchased from us were goods which we had repurchased from a man who was in business in that community, and under the contract we had with him we repurchased his goods here at Freeport, and then sold them to Mr. Seward under a bill of sale that we had; the deal all being consummated here at Freeport. Then we sold· him some other goods on his written order, which were sold him f. o. b. cars, Oakland, California.''

An invoice of the goods which are the subject of dispute was made out by J. S. Barnett, E. M. Seward, and F. G. Larson, the representative of the plaintiff, of Oakland, California, on a transfer order blank of plaintiff's, which states the following:

"Transferred from J. S. Barnett, retailer transferring products, to E. M. Seward, retailer receiving products:

"August 4, 1917.

"The W. T. Rawleigh Company.

"Gentlemen: Subject to your approval, I have this date transferred to Mr. E. M. Seward, address Divide, Ore., * * my stock of Rawleigh Products, * * which are to be credited to my account at current wholesale prices as per contract."

After some other particulars follows the signature of J. S. Barnett and then a list of the goods at the bottom of which it is stated that, subject to the approval of the company, E. M. Seward accepted from Barnett the products listed. Mr. Seward testified in regard to the supplies contained in the list as follows:

"Q. Did you receive from the plaintiff the goods referred to in Exhibit 'B'?

"A. Yes, I received them from Barnett, through their agent, it was their assistant, the manager from Oakland was there at the time."

He further stated:

"He [Barnett] had the goods in his possession, and they were transferred, just as I transferred all the goods I had left to Mr. Luebke."

He testified in effect that he got the list of the goods and the possession of the goods from Barnett; that he did not pay Barnett for them, but only paid him the money that he had paid out for freight; that he did not promise or agree to pay Barnett the purchase price of the goods; that no value of the supplies was fixed between Seward and Barnett at the time of the transfer; that the price was fixed by the company; and that he was sent a list of the goods, with the price attached and was charged with

the amount, and Barnett was credited with it, $320.94. This appears to have been done at Freeport, Illinois, on August 16, 1917, when the transfer was completed.

I find no semblance of testimony showing that Barnett sold any of these goods to Seward, or pretended to make such sale. The written evidence shows, directly to the contrary, that the goods were repurchased by the plaintiff from Barnett and sold to Seward, the payment for which was guaranteed in writing by the defendants. It was a three-cornered transaction, but was in writing, and was plain and fair. Seward appears to have made no contract whatever with Barnett in regard to the goods:

We find in 23 R. C. L. 1186, Section 2:

"Blackstone defines a sale to be 'a transmutation of property from one man to another in consideration of some price or recompense in value,' and the term has been defined by courts as a transfer of the property in a chattel for a consideration. To constitute a sale in its broader sense the price need not necessarily be money, but if the property is sold for a fixed money price, whether it be paid in cash or in goods, it is a sale. In its more strict sense a sale may be defined as 'transfer of the absolute or general property in a thing for a price in money,' which the buyer pays or promises to pay for the thing bought and sold, and it has been said that it means at all times a contract to pass rights of property for money which the buyer pays, or promises to pay, to the seller for the thing bought and sold."

To the same effect see 35 Cyc. 25.

The trial court erred in directing a verdict for the defendants in the face of practically uncontradicted testimony. I am therefore unable to concur in the opinion of Mr. Justice Johns.